1  Jeffrey H. Reeves, Esq. (State Bar No. 156648)
   jreeves@tocounsel.com
2  Cheryl Priest Ainsworth, Esq. (State Bar No. 255824)
   cainsworth@tocounsel.com
3  THEODORA ORINGHER PC
   535 Anton Boulevard, Ninth Floor
4  Costa Mesa, California 92626-7109
   Telephone: (714) 549-6200
5  Facsimile: (714) 549-6201

6  Attorneys for Defendant
7  BIO-NUTRITIONAL RESEARCH GROUP, INC.

8

9              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
10

11

12  DELORIS RANKINS, D-PROTEIN          Case No.: 8:20-cv-01489-JWH-DFM
    FOODS, LLC, a California Limited
13  Liability Company,                  **DEFENDANT BIO-NUTRITIONAL**
                                        **RESEARCH GROUP, INC.'S**
14              Plaintiffs,             **ANSWER TO PLAINTIFFS'**
                                        **SECOND AMENDED COMPLAINT**
15       v.                             **AND COUNTERCLAIMS AGAINST**
                                        **DELORIS RANKINS AND D-**
16  BIO-NUTRITIONAL RESEARCH            **PROTEIN FOODS, LLC**
    GROUP, INC., a California
17  Corporation,; and DOES 1 through
    50, inclusive,
18
                Defendants.
19

20                                      **JURY TRIAL DEMANDED**

21

22

23

24

25

26

27

28

Defendant Bio-Nutritional Research Group, Inc. ("BNRG") hereby responds to the Second Amended Complaint ("Amended Complaint") filed by Plaintiffs D-Protein Foods, LLC ("D-Pro") and Deloris Rankins ("Rankins") (collectively, the "Plaintiffs").  Defendant has adopted the headings found in the Amended Complaint for ease of reference.  However, to the extent that such headings themselves contain factual or legal statements, allegations, or characterizations, Defendant denies those statements, allegations, or characterizations.

## **PARTIES**

1.      Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 1 of the Amended Complaint, and therefore denies the same.

2.      Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 2 of the Amended Complaint, and therefore denies the same.

3.      Defendant admits it is a California Corporation with a principal place of business in Irvine, California.  Defendant admits it manufactures certain protein products under the brand name "Power Crunch," however Defendant denies that it "does business as" Power Crunch. Defendant also admits it sells protein bars online and in retail stores.  Defendant denies the remaining allegations of Paragraph 3 of the Amended Complaint.

4.      Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 4 of the Amended Complaint, and therefore denies the same.

5.      Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 5 of the Amended Complaint, and therefore denies the same.

6.      Paragraph 6 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required.

7.     Paragraph 7 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required.

8.     Paragraph 8 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required.

9.     Paragraph 9 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 9.

10.     Paragraph 10 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 10.

11.     Defendant admits that it is a corporation that does business in this District.  Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in Paragraph 11 of the Amended Complaint, and therefore denies the same.

12.     Paragraph 12 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required.

13.     Paragraph 13 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required.

## JURISDICTION AND VENUE

14.     Defendant admits that this Court has subject matter jurisdiction over Plaintiffs' Lanham Act claims.  Defendant denies the remaining allegations of Paragraph 14.

15.     Defendant admits that this Court has supplemental jurisdiction over Plaintiffs' state law claims to the extent that the Court has subject matter jurisdiction over Plaintiffs' Lanham Act claims.  Defendant denies the remaining allegations of Paragraph 15.

16.     Defendant admits that this Court has specific jurisdiction over Defendant BNRG.  Defendant also admits that it sells and advertises its products

within the State of California, maintains a website that promotes and advertises Defendant BNRG's goods to the public, and offers for sale its goods to the public, including persons and entities in the State of California. Defendant denies the remaining allegations of Paragraph 16.

17. Defendant admits that this Court has general jurisdiction over Defendant BNRG. Defendant also admits that it sells its products in retail stores in the State of California and within this District, maintains a website, and that its products are distributed in California. Defendant denies the remaining allegations of Paragraph 17.

18. Defendant admits that venue in this district is proper. The remaining allegations of Paragraph 18 contains legal arguments and other nonfactual allegations to which no response is required.

## NATURE OF THE ACTION

19. Paragraph 19 of the Amended Complaint contains legal arguments and other nonfactual allegations to which no response is required. To the extent a response is required, Defendant admits that this is a purported action for trademark infringement, counterfeiting, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, et seq, and violation of California Business and Professions Code §§ 17200 et seq., and 17500 et seq. Defendant denies the remaining allegations of Paragraph 19.

## STATEMENT OF FACTS

20. Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 20 of the Amended Complaint, and therefore denies the same.

21. Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 21 of the Amended Complaint, and therefore denies the same.

22.     Defendant denies that it "does business as 'Power Crunch.'" Defendant manufactures and sells products under the brand name "Power Crunch" in the United States and sells high-protein energy bars.  Defendant admits that in or around the first week of May 2020, Defendant launched a video campaign that used the slogan, "Where Protein Meets Delicious."  Defendant denies the remaining allegations of Paragraph 22.

23.     Defendant admits that, on May 8, 2020, it submitted a trademark application with the United States Patent and Trademark Office for WHERE PROTEIN MEETS DELICIOUS in Class 5 (Ser. No. 88907477) for "protein supplements formed and packaged as bars."  Defendant denies the remaining allegations of Paragraph 23.

24.     Defendant admits the allegations set forth in Paragraph 24.

25.     Defendant denies the allegations set forth in Paragraph 25.

26.     Defendant denies the allegations set forth in Paragraph 26.

27.     Defendant denies the allegations set forth in Paragraph 27.

28.     Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 28 of the Amended Complaint, and therefore denies the same.

29.     Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 29 of the Amended Complaint, and therefore denies the same.

## ANSWER TO FIRST CAUSE OF ACTION

### (Federal Trademark Infringement – 15 U.S.C. § 1114)

### (against all defendants)

30.     Defendant refers to and incorporates herein by reference all defenses and all responses to allegations stated above as if fully set forth herein.

31.     Defendant denies the allegations set forth in Paragraph 31.

32.     Defendant denies the allegations set forth in Paragraph 32.

33.     Defendant denies the allegations set forth in Paragraph 33.

34.     Defendant admits it is not affiliated or connected with any of the Plaintiffs.  Defendant denies the remaining allegations of Paragraph 34.

35.     Defendant denies the allegations set forth in Paragraph 35.

36.     Defendant denies the allegations set forth in Paragraph 36.

37.     Defendant denies the allegations set forth in Paragraph 37.

38.     Defendant admits Plaintiffs have no control over the quality of the goods offered by Defendants.  Defendant denies the remaining allegations set forth in Paragraph 38.

39.     Defendant denies the allegations set forth in Paragraph 39.

40.     Defendant denies the allegations set forth in Paragraph 40.

41.     Defendant denies the allegations set forth in Paragraph 41.

## ANSWER TO SECOND CAUSE OF ACTION

### Unfair Competition [B&P § 17200, *et seq*]

### (against all Defendants)

42.     Defendant refers to and incorporates herein by reference all defenses and all responses to allegations stated above as if fully set forth herein.

43.     Defendant denies the allegations set forth in Paragraph 43.

44.     Defendant denies the allegations set forth in Paragraph 44.

45.     Defendant admits that Plaintiffs purport to seek an order from this Court pursuant to California Business and Professions Code § 17203.  Defendant denies the remaining allegations set forth in Paragraph 45.

46.     Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 46 of the Amended Complaint, and therefore denies the same.

## ANSWER TO THIRD CAUSE OF ACTION

## FEDERAL UNFAIR COMPETITION 15 U.S.C. § 1125(a), et seq.

### (against all Defendants)

47.    Defendant refers to and incorporates herein by reference all defenses and all responses to allegations stated above as if fully set forth herein.

48.    Defendant denies the allegations set forth in Paragraph 48.

49.    Defendant denies the allegations set forth in Paragraph 49.

50.    Defendant admits Plaintiffs have no control over the nature and quality of the goods offered by Defendants.  Defendant denies the remaining allegations set forth in Paragraph 50.

51.    Defendant denies the allegations set forth in Paragraph 51.

52.    Defendant denies the allegations set forth in Paragraph 52.

53.    Defendant denies the allegations set forth in Paragraph 53.

54.    Defendant denies the allegations set forth in Paragraph 54.

### ANSWER TO PRAYER FOR RELIEF

Defendant denies that Plaintiffs are entitled to any relief set forth in the Amended Complaint.

### ANSWER TO DEMAND FOR JURY TRIAL

Defendant states that Plaintiffs' demand for a jury trial does not require an admission or denial.

## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without assuming any burden that it would not otherwise bear, and reserving its right to assert additional affirmative defenses, Defendant asserts the following affirmative defenses to Plaintiffs' Amended Complaint.

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, either in whole or in part, by the doctrines of waiver, laches, and/ or acquiescence.

### THIRD AFFIRMATIVE DEFENSE

Defendant has not infringed, either directly or indirectly, Plaintiffs' trademark, if any.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, either in whole or in part, by the doctrines of fair use and/or nominative use.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged trademark is not distinctive and has not achieved secondary meaning.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, either in whole or in part, because Defendant's use, if any, of Plaintiffs' mark is not likely to cause confusion, or to cause mistake, or to deceive consumers in any way.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, either in whole or in part, to the extent Plaintiffs' mark, if any, is generic and/or invalid.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of acquiescence and/or estoppel.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by, in whole or in part, by the doctrine of laches.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by, in whole or in part, by consent to use Plaintiffs' mark, if any, and/or waiver.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, either in whole or in part, because Defendant's conduct, if any, was not willful or intentional.

### TWELFTH AFFIRMATIVE DEFENSE

Defendant was unaware of Plaintiffs' alleged trademark rights and has acted in a lawful and good faith manner.  Accordingly, Plaintiffs are not entitled to compensatory damages, punitive damages or attorneys' fees.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, either in whole or in part, to the extent Plaintiffs' damages are speculative and inherently uncertain and/or because Plaintiffs have failed to mitigate their alleged damages.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, either in whole or in part, by their own inequitable conduct and unclean hands.

### **<u>DEMAND FOR JURY TRIAL</u>**

Defendant BNRG hereby respectfully requests a trial by jury in this matter for all issues so triable.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Defendant and counterclaimant Bio-Nutritional Research Group, Inc., hereby alleges as follows for their counterclaims against Deloris Rankins and D-Protein Foods, LLC:

## PARTIES

1.     Bio-Nutritional Research Group, Inc. ("BNRG") is a California Corporation with its headquarters in Irvine, California.

2.     Deloris Rankins ("Rankins") is an individual residing in Orange County, California.

3.     D-Protein Foods, LLC ("D-Pro") is a California limited liability company purportedly owned by Ms. Rankins with its headquarters in Laguna Niguel, California.

## JURISDICTION

4.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338 as an actual and justiciable controversy exists between the parties.

5.     In addition, this Court has supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367(a).

6.     This Court has personal jurisdiction over D-Pro and Ms. Rankins (collectively, "D-Pro") by virtue of its filing of the Second Amended Complaint and appearing in this Action.

## FACTUAL BACKGROUND

7.     This counterclaim concerns false advertising, false representations, and/or misrepresentations made by D-Pro about its protein meal bars, which actions are deliberately designed to deceive consumers and harm potential competitors.  D-Pro's actions, as alleged more fully below, have caused and continue to cause irreparable damage to BNRG.

8.     BNRG manufactures and offers for sale products under the brand name POWER CRUNCH.  These products include high-protein energy bars and protein powders.

9.     D-Pro manufactures and offers for sale purported high-protein meal replacement bars under the brand name D-PRO and in connection with the complete phrase "D-Pro Where Protein Meets Delicious" (the "Meal Bars").

10.     D-Pro distributes and/or attempts to distribute the Meal Bars to customers throughout the United States.

11.     On August 11, 2020, D-Pro filed this action against BNRG.  In this action, D-Pro alleges that its products are marketed and sold to the same consumers as BNRG.  D-Pro also alleges that its products are in direct competition with BNRG's products.

I.     **D-Pro's False Representations of Protein Content and Daily Value Percentage of Protein**

12.     D-Pro alleges that it manufactures, markets and sells the Meal Bars on its own retail website to potential customers throughout the United States, including the State of California.  In fact, as of the time of this filing, D-Pro's website is non-operational (and therefore the basis for its lack of sales), however, D-Pro had a functioning website at one time on which it represented that, "D-Pro meal bars are not just a great snack between meals - they are a real delicious high protein meal in a bar!"  D-Pro also stated that, "[y]ou'll get the right amount of calories, fiber, healthy fats and premium proteins to sustain you throughout the day."  D-Pro attempts to position the Meal Bars as "high protein" in the protein product marketplace.

13.     D-Pro has marketed the Meal Bars under the slogan, "Where Protein Meets Delicious."  D-Pro repeatedly boasted on its now defunct website and on the labeling for its products that each Meal Bar is "HIGH PROTEIN."  All of the Meal Bars currently being marketed and sold on by D-Pro claim to contain between 13g-23g of protein.

14.     These protein claims are again repeated in the Nutrition Facts section of the label for the Meal Bars.

15.     Upon information and belief, D-Pro's Sweet Potato Pie flavored Meal Bar, Veganlicious Nutty Maple Dark Chocolate, Veganlicious Almond Avocado Carrot all falsely and deceptively inflate the actual protein content on its label and in marketing materials.

a.     D-Pro's Sweet Potato Pie flavored Meal Bar claims that it contains 22g of protein.  In reality, this Meal Bar only contains 5.75g of protein.

b.     D-Pro's Veganlicious Nutty Maple Dark Chocolate flavored Meal Bar claims that it contains 21g of protein.  In reality, this Meal Bar only contains 9g of protein.

c.     D-Pro's Veganlicious Almond Avocado Carrot flavored Meal Bar claims that it contains 20g of protein.  In reality, this Meal Bar only contains 11.5g of protein.

16.     Upon information and belief, D-Pro's labeling also miscalculates the % DV of protein.

17.     By way of example, the packaging and Nutritional Facts for the Nutty Blueberry Banana flavored Meal Bar claims the product has "23g PROTEIN" for one Meal Bar (or 113g serving) with "46% DV" for protein per Bar:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



DEFENDANT'S ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' SECOND AMENDED COMPLAINT

**NUTTY BLUEBERRY BANANA**

**Nutrition Facts**

1 serving per container

Serving size — 1 Bar (113g)

Amount per serving

**Calories** — **200**

% Daily Value *

| | |
|---|---|
| **Total Fat** 9g | 12% |
| Saturated Fat 0.5g | 3% |
| Trans Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 250mg | 11% |
| **Total Carbohydrate** 13g | 5% |
| Dietary Fiber 5g | 18% |
| Total Sugars 2g | |
| Includes 0g Added Sugars | 0% |
| **Protein** 23g | 46% |
| Vitamin D 0mcg | 0% |
| Calcium 60mg | 4% |
| Iron 5mg | 30% |
| Potassium 120mg | 2% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

INGREDIENTS: ORGANIC PROTEIN PLANT BASED POWDER, ORGANIC PEA PROTEIN POWDER, ORGANIC BLUEBERRIES, ORGANIC BANANA, ORGANIC VANILLA FLAVORING, ORGANIC ALMOND FLOUR, ORGANIC MONK FRUIT, ORGANIC WALNUTS, LESS THAN 2% OF: ORGANIC BAKING POWDER, ORGANIC EXTRA VIRGIN OLIVE OIL, ORGANIC VANILLA BEAN POWDER, PLANT BASED HALF & HALF, ORGANIC SPICES.

CONTAINS: WALNUT

Ready To Eat

Optional Heating Instructions:
Microwave: Heat on high for 30 seconds or until hot
Conventional Oven: Heat for 5 minutes until hot

Refrigerate after purchase or freeze within 5 days of purchase for longer periods of keeping.

Product of USA
Distributed By:
D-Protein Foods, LLC
Laguna Niguel, CA 92677
www.DeliciousProteins.com

18.     The United States Food and Drug Administration (the "FDA") has published 'A Food Labeling Guide, Guidance for the Industry' (hereinafter, the "FDA Food Labeling Guide"), a food labeling guide that specifically addresses nutritional labeling when protein claims are made.  According to the FDA, "[t]he percent of the [Daily Reference Value] is required if a protein claim is made for the product or purported to be for use by infants or children under 4 years of age."[1]

19.     For the purpose of listing protein as a percent of Daily Value ("% DV"), the FDA has established that the percent Daily Reference Value ("DRV") for adults is 50 grams. 21 CFR 101.9(c)(7)(iii).

20.     The FDA further provides:

---

[1] U.S. Food & Drug Administration, *Guidance for Industry: A Food Labeling Guide* at 30, https://www.fda.gov/media/81606/download (last visited January 27, 2021) [hereinafter, "FDA's Food Labeling Guide"].

DEFENDANT'S ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' SECOND AMENDED COMPLAINT

1
2
3
4
5

> When protein is listed as a percent of the 50 gram DRV and expressed as % DV, the % DV is calculated by correcting the actual amount of protein in grams per serving by multiplying the amount by its amino acid score corrected for protein digestibility, dividing by 50 grams, and converting to percent.

6  FDA's Food Labeling Guide at 30 (citing 21 C.F.R. 101.9(c)(7)(ii)).

7      21.    D-Pro makes protein claims about its Meal Bars, including on its now-
8  defunct website and on the front packaging of its products.  Because D-Pro makes
9  protein claims, it is required to list the % DV for protein in the Nutritional Facts
10 section for its products.

11     22.    According to the federal Food, Drug and Cosmetic Act ("FDCA"),
12 where a product label states the % DV for protein (as it does, here), the label
13 percentage values must be ascertained via a testing methodology known as the
14 Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), which measures
15 the actual quality of the protein contained in a product.

16     23.    The PDCAAS has been adopted by the Food and Agriculture
17 Organization of the United Nations and the World Health Organization as the
18 preferred method for the measurement of the protein value in human nutrition, and
19 the calculation formula for the PDCAAS is set forth in the FDCA.  The PDCAAS
20 shall be determined by the methods provided in sections 5.4.1, 7.2.1, and 8.00 in
21 "Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on
22 Protein Quality Evaluation," Rome, 1990. 21 C.F.R. § 101.9(c)(7)(ii).

23     24.    The PDCAAS calculation referenced under the FDCA is:

24
25

$$PDCAAS(\%) = \frac{mg \ of \ limiting \ amino \ acid \ in \ 1g \ of \ test \ protein}{mg \ of \ same \ amino \ acid \ in \ 1 \ g \ of \ reference \ protein} = \text{fecal true digestibility (\%) x100}$$

26

27     25.    The PDCAAS method ensures that consumers are being informed about
28 the "quality" of the protein contained a product.  Protein quality is measured based

on human essential amino acid requirements and humans' ability to digest it. Accordingly, this testing method requires the manufacturer to determine the amount of essential amino acids contained within a product.  The test protein is compared to a standard amino acid profile and is given a score from 0-1.0, with a score of 1.0 indicating maximum amino acid digestibility.  Common protein supplements (whey, casein, and soy) all receive 1.0 scores.  Meat and soybeans (0.9), vegetables and other legumes (0.7), and whole wheat and peanuts (0.25-0.55) all provide diminished protein digestibility.[2]  The PDCAAS is currently considered the most reliable score of protein quality for human nutrition.

26.    As shown in the above example, D-Pro's Nutrition Facts section lists the Nutty Blueberry Banana flavored Meal Bar as having 46% DV for protein.  The 46% DV is based on the 50-gram DV required by the FDCA and the 23-gram per serving protein claim on the Meal Bar (23 grams / 50 grams = 46% DV).  21 C.F.R. § 101.9(c)(7)(iii).

27.    D-Pro, however, is statutorily obligated to calculate the % DV "by correcting the actual amount of protein in grams per serving by multiplying the amount by its amino acid score corrected for protein digestibility, dividing by 50 grams, and converting to a percentage."  21 CFR 101.9(c)(7)(ii).  Upon information and belief, in violation of the FDCA, D-Pro simply used unreliable nitrogen testing to determine the protein content without using the PDCAAS to correct the amount of protein.

28.    Upon information and belief, D-Pro did not test for individual amino acids as required by the PDCAAS.  Accordingly, D-Pro has overstated the percent of DV.

---

[2] Neil Thanedar, *Protein Quality-The 4 Most Important Metrics,* LABDOOR MAGAZINE (May 20, 2014), https://labdoor.com/article/protein-quality-the-4-most-important-metrics (last visited January 27, 2021).

29.    The protein ingredients listed for the Meal Bars (protein plant based powder, pea protein powder) have a PDCAAS of approximately 0.7.  Therefore, even if the protein content is 23 grams per meal bar as D-Pro represents, the percent of DV is reduced because of the inclusion of low-digestible proteins. Thus D-Pro's protein claims are false and misleading.

30.    Upon information and belief, D-Pro intentionally miscalculated and misrepresents the % DV for the Meal Bars. The protein content claimed on the labels of its Meal Bars (between 13g-23g) is objectively false because the PDCAAS was not tested for properly by D-Pro. D-Pro's percent of DV is also false and misleading because it is not based on the PDCAAS.

31.    Despite having knowledge that miscalculating the percent of DV of protein and inflating the protein content is misleading to consumers, D-Pro continues to advertise, distribute, label, manufacture, market, and sell the Meal Bars in a misleading and deceptive manner in order to increase its sales and maximize its profits.  D-Pro is marketing a "high protein" meal replacement that simply does not deliver on the promised protein content, to the detriment of consumers and competitors.

32.    D-Pro consumers pay an inflated price for the Meal Bars, which delivers less actual and quality protein than they reasonably expect to receive based on D-Pro's affirmative misrepresentations.

**II.    D-Pro's Undeclared Major Food Allergens**

33.    In addition to misrepresenting the amount and quality of protein in its products D-Pro's products contain major food allergens that are undeclared on its product labels.

34.    By way of example, the Nutty Blueberry Banana flavored Meal Bar lists "almond powder" in its ingredients list but does not list "almonds" in the "CONTAINS" section of its food label, as shown above.

DEFENDANT'S ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

35.   Similarly, the Peanut Butter Almond flavored Meal Bar lists "coconut cream powder" in its ingredients list but does not list "coconut" in the "CONTAINS" section of its food label, as shown above.

36.   D-Pro's failure to disclose major food allergens on the product labels of its Meal Bars violates the FDA Guide, which requires all major food allergens (including almond and coconut) to be included in the "Contains" section when a "Contains" statement is used on a food label.

37.   D-Pro's various false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

38.   D-Pro's false, deceptive and misleading label statements are unlawful under State Unfair and Deceptive Acts and Practices Statutes and/or Consumer

Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

39.     Further, as explained above, D-Pro's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "[a] food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular."

40.     Similar to the FDCA, California State prohibits the misbranding of food through the California Health and Safety Code § 110660. California provides that, "Any food is misbranded if its labeling is false or misleading in any particular."

**III.     D-Pro's False and Misleading Statements About its Bars Being Vegan and Dairy-Free, as well as False Statements about the Sugar, Calories, Fat, and Carbohydrates in its Products**

41.     D-Pro falsely and misleadingly markets the Meal Bars as having certain health and wellness benefits that they do not.

42.     D-Pro represented on its apparently-defunct website on its website that its Meal Bars contain the following benefits:

- dairy-free;
- vegan;
- low fat; and
- low sugar.

43.     Below is a screen grab of the relevant portion of D-Pro's website when it was operational:

44.     However, D-Pro sells Meal Bars that are not dairy-free and vegan, despite the website claims that its bars are both. By way of example, the Ketolicious Parmesan Green Veggies flavored Meal Bar contains "milk," which is a dairy and non-vegan ingredient:

DEFENDANT'S ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

**Nutrition Facts**

1 serving per container

Serving size **1 Bar (113g)**

Amount per serving

**Calories** **200**

% Daily Value *

**Total Fat** 10g **13%**

Saturated Fat 3.5g **18%**

Trans Fat 0g

**Cholesterol** 15mg **5%**

**Sodium** 230mg **10%**

**Total Carbohydrate** 16g **6%**

Dietary Fiber 10g **36%**

Total Sugars 1g

Includes 0g Added Sugars **0%**

**Protein** 20g **40%**

Vitamin D 0.1mcg 0%

Calcium 140mg 10%

Iron 4.3mg 25%

Potassium 290mg 6%

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

KETOLICIOUS PARMESAN GREEN VEGGIES

INGREDIENTS: ORGANIC HEMP PROTEIN POWDER, ORGANIC PROTEIN PLANT BASED POWDER, PARMESAN CHEESE, ORGANIC KALE, ORGANIC ZUCCHINI, ORGANIC CREAM CHEESE, ORGANIC SPINACH, ORGANIC BROCCOLI, LESS THAN 2% OF: ORGANIC BAKING POWDER, ORGANIC GLUTEN FREE ROLLED OATS, ORGANIC SPICES.
CONTAINS: MILK

Heating Instructions:
Microwave: Heat on high for 30 seconds or until hot
Conventional Oven: Heat for 5 minutes until hot

**Refrigerate after purchase or freeze within 5 days of purchase for longer periods of keeping.**

Product of USA
Distributed By:
D-Protein Foods, LLC
Laguna Niguel, CA 92677
www.DeliciousProteins.com

16      45.    Additionally, D-Pro markets its Veganlicious Nutty Maple Dark

17  Chocolate flavored Meal Bar as a vegan product, yet this product contains dairy.

18  Not only did D-Pro falsely advertise Veganlicious Nutty Maple Dark Chocolate as

19  vegan, but laboratory testing revealed that this purportedly vegan product contains

20  milk, an animal protein. In addition to the bar clearly not being vegan, despite D-

21  Pro's misrepresentation, the Meal Bar also fails to indicate that it contains milk as an

22  allergen:

23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

**Nutrition Facts**

1 serving per container
Serving size        1 Bar (113g)

**Amount per serving**
**Calories**              **210**

| | % Daily Value * |
|---|---|
| **Total Fat** 9g | **12%** |
| Saturated Fat 2.5g | **13%** |
| *Trans* Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 250mg | **11%** |
| **Total Carbohydrate** 15g | **5%** |
| Dietary Fiber 6g | **21%** |
| Total Sugars 2g | |
| Includes 1g Added Sugars | **2%** |
| Sugar Alcohol 0g | |
| **Protein** 21g | **42%** |
| Vitamin D 0mcg | 0% |
| Calcium 60mg | 4% |
| Iron 5.5mg | 30% |
| Potassium 160mg | 4% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**VEGANLICIOUS NUTTY MAPLE DARK CHOCOLATE**

**INGREDIENTS:** ORGANIC PROTEIN PLANT BASED POWDER, ORGANIC PEA PROTEIN POWDER, ORGANIC UNSWEETENED ALMOND MILK, ORGANIC COCONUT FLOUR, ORGANIC ALMOND FLOUR, ORGANIC WALNUTS, ORGANIC PECANS, ORGANIC VANILLA FLAVORING, ORGANIC CACAO, LESS THAN 2% OF: ORGANIC BAKING POWDER, ORGANIC COCONUT OIL, ORGANIC WHOLE GRAIN GLUTEN FREE OATS, ORGANIC AGAVE, ORGANIC MONK FRUIT, SEMI-SWEET CHOCOLATE MEGA CHUNKS, ORGANIC SPICES.

**CONTAINS:** ALMOND, WALNUT, PECAN, COCONUT

**Ready To Eat**

**Optional Heating Instructions:**
Microwave: Heat on high for 30 seconds or until hot
Conventional Oven: Heat for 5 minutes until hot

**Refrigerate after purchase or freeze within 5 days of purchase for longer periods of keeping.**

**Product of USA**
Distributed By:
D-Protein Foods, LLC
Laguna Niguel, CA 92677
www.DeliciousProteins.com

19
20
21

46.    Moreover, the FDA Guide provides that in order to claim a product is "low fat," it must contain 3 grams or less of total fat per 100 grams of product. *See* FDA's Food Labeling Guide at 88 (citing 21 CFR § 101.62(b)).

22
23
24
25
26

47.    Despite its website claiming that the Meal Bars are "low fat," D-Pro sells Meal Bars that contain more than the allowable fat content for a "low fat" claim. By way of example, the Ketolicious Parmesan Green Veggies flavored Meal Bar contains 10 grams of total fat for its 113 gram Meal Bar. This fat content is in excess of the allowable fat content for an advertised "low fat" product.

27
28

48.    The FDA also provides that nutrient content claims of "low sugar" may not be used. *See* FDA Food Labeling Guide at 90 (citing 21 CFR § 101.60(c)). In

DEFENDANT'S ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' SECOND AMENDED COMPLAINT

violation of the FDA's Food Labeling Guide, D-Pro markets its Meal Bars on its now-defunct website as "low sugar."

49.     D-Pro's false advertising about the content and allergens in its products causes harm by misleading consumers about the content of the food products they consume.  For example, consumers seeking dairy-free or vegan products may have an allergen to dairy or animal products.  Further, consumers interested in the amount of protein they consume are likely adverse to consuming excessive amounts of fat and sugar. Not only do the labeling and marketing of D-Pro's Meal Bars fail to enable consumers to readily understand the significance of the respective amounts of protein, fat and sugar contained in the product in the context of a total daily diet, they also actively mislead consumers regarding the nutritional content.

50.     Upon information and belief, D-Pro's nutritional labeling contains the following misleading statements on its Meal Bars:

  a. D-Pro's Sweet Potato Pie flavored Meal Bar claims that it has 9g of fiber, 1g of sugar, and 24g of carbohydrates.  However, in reality, this Meal Bar contains 4g of fiber, 14.5g of sugar, and 30g of carbohydrates.

  b. D-Pro's Veganlicious Nutty Maple Dark Chocolate flavored Meal Bar claims that it has 210 calories, 9g of fat, 2.5g of saturated fat, 2g of sugar, and 15g of carbohydrates.  In reality, this Meal Bar contains 408 calories, 22.8g of fat, 8.5g of saturated fat, 20g of sugar, and 44.5g of carbohydrates.

  c. D-Pro's Veganlicious Almond Avocado Carrot flavored Meal Bar claims that it has 220 calories, 9g of fat, 2.5g of saturated fat, 2g of sugar, and 18g of carbohydrates.  In reality, this Meal Bar contains 343 calories, 22.9g of fat, 6g of saturated fat, 4.8g of sugar, and 27g of carbohydrates.

51.     D-Pro's advertising regarding the health benefits of its Meal Bars and its nutritional labeling are false or misleading to consumers.

52.     Due to D-Pro's attempts to position itself in the protein and health product marketplace and compete with BNRG's customers, D-Pro's misleading and deceptive practices have caused and will continue to cause harm to BNRG. Additionally, D-Pro's mislabeled and inferior products, together with its unsafe labeling and manufacturing, run the risk of tarnishing BNRG's reputation if any customer associated D-Pro's products with BNRG. In other words, BNRG has a vested interest in *avoiding* confusion of D-Pro's products for BNRG products.

## FIRST CLAIM FOR RELIEF

### (False Advertising under 15 U.S.C. § 1125(a))

53.     BNRG incorporates by reference paragraphs 1 through 52 above as though fully set forth herein.

54.     D-Pro has made and distributed in interstate commerce and in this District advertisements that contain false and misleading statements of fact regarding its products.  These advertisements contain actual misstatements and/or misleading statements or failures to disclose, specifically the statements referred to above.

55.     Based upon D-Pro's representations that its products are in direct competition with BNRG's products, these statements actually deceive, or have a tendency to deceive, a substantial segment of BNRG customers and potential customers as well as D-Pro's customers and potential customers.  This deception is material in that the statements concern the inherent quality or characteristics of D-Pro's products and are likely to influence the purchasing decision of D-Pro's customers and potential customers.

56.     D-Pro's false and misleading advertising statements and omissions injure both consumers and BNRG.

57.     D-Pro's false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     D-Pro has caused, and will continue to cause, immediate and irreparable injury to BNRG, including injury to BNRG's business, reputation and goodwill, for which there is no adequate remedy at law.  BNRG is therefore entitled to an injunction under 15 U.S.C § 1116 restraining D-Pro, its agents, employees, representatives and all persons acting in concert with D-Pro from engaging in future acts of false advertising and ordering removal of all of D-Pro's false advertisements.

59.     Pursuant to 15 U.S.C. § 1117, BNRG is further entitled to recover from D-Pro the damages sustained by BNRG as a result of D-Pro's acts in violation of 15 U.S.C. § 1125(a).

60.     Pursuant to 15 U.S.C. § 1117, BNRG is further entitled to recover from D-Pro the gains, profits and advantages that D-Pro has obtained as a result of D-Pro's acts in violation of 15 U.S.C. § 1125(a).

61.     Pursuant to 15 U.S.C. § 1117, BNRG is further entitled to recover the costs of this action. BNRG is informed and believes, and on that basis alleges, that D-Pro's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling BNRG to recover additional damages and reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF

### (False Advertising/Violation of False Advertising/Violation of California Business and Professions Code Section 17500)

62.     BNRG incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

63.     D-Pro's false and misleading claims in its advertising were and are being disseminated in California.

64.     D-Pro made its false and misleading representations of fact in the course of its regular business.

65.     D-Pro knew or in the exercise of reasonable care should have known that its publicly disseminated statements and omissions relating to its products, as set forth in detail above, were false and misleading.

66.     D-Pro's untrue and misleading statements, as set forth above, were made with the intent to increase its sales and maximize its profits.

67.     D-Pro's untrue and misleading statements constitute false advertising in violation of California Business and Professions Code section 17500.

68.     D-Pro has profited and will continue to profit unjustly from their unlawful, unfair, and fraudulent business practices.  Accordingly, pursuant to California Business and Professions Code section 17203, BNRG requests that the Court issue a permanent injunction, restraining and enjoining D-Pro and its agents, employees, representatives, and anyone acting in concert and participation with D-Pro from engaging in the unlawful, unfair, and fraudulent business practice alleged herein.

## THIRD CLAIM FOR RELIEF

**(Unfair Competition in Violation of California Business and Professions Code Section 17200)**

69.     BNRG incorporates by reference paragraphs 1 through 68 above as though fully set forth herein.

70.     As set forth herein, D-Pro has engaged in a variety of conduct that constitutes unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code section 17200, including but not limited to making false representations regarding protein content and % DV of protein in its products, failing to disclose major allergens in its products, making false and misleading statements about its products being vegan and dairy-free, as well as making false statements about the sugar, calories, fat, and carbs in its products, all in violation of applicable federal regulations, and to the peril of its customers and BNRG.

71.    D-Pro has profited and will continue to profit unjustly from their unlawful, unfair, and fraudulent business practices.  Accordingly, pursuant to California Business and Professions Code section 17203, BNRG requests that the Court issue a permanent injunction, restraining and enjoining D-Pro and its agents, employees, representatives, and anyone acting in concert and participation with D-Pro from engaging in the unlawful, unfair, and fraudulent business practice alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, BNRG respectfully requests that the Court enter judgment in its favor as follows:

A.    Dismissing D-Pro's Amended Complaint in its entirety, with prejudice, entering judgment in favor of BNRG;

B.    Adjudging that D-Pro has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and California Business and Professions Code Sections 17200 and 17500;

C.    Enjoining D-Pro and all those in active concert and participation with D-Pro from using false and misleading statements, advertisements, and marketing materials to promote its products, including the campaign/advertising discussed above;

D.    Awarding BNRG compensatory and general damages arising out of D-Pro's false and misleading advertising, as well as trebling such amounts pursuant to 15 U.S.C. § 1117;

E.    Awarding BNRG costs including reasonable attorneys' fees and costs incurred in prosecuting this action;

F.    For such other relief as to the Court may deem just and proper.

/ / /

/ / /

/ / /

1

## **<u>COUNTERCLAIM PLAINTIFF'S DEMAND FOR JURY TRIAL</u>**

2      BNRG respectfully requests a trial by jury on all issues so triable.

3

4                                     Respectfully submitted,

5

6   Dated: February 2, 2021          _/s/ Jeffrey H. Reeves_____ _____
                                     Jeffrey H. Reeves, Esq.
7                                    Cheryl Priest Ainsworth, Esq.
                                     Attorneys for BIO-NUTRITIONAL
8                                    RESEARCH GROUP, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28